IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

LYNN BARNHILL, as Wrongful Death Act
Representative of the Estate of AIDA MUSA, Deceased, and
AZIZ K. MUSA, and TARIQ MUSA and OMAR MUSA,

    Plaintiffs,

vs.     No. 10cv634 BB/ACT

BMW OF NORTH AMERICA, LLC and
BAYERISCHE MOTOREN WERKE AG,

    Defendants.

**PLAINTIFFS' REPLY TO DEFENDANT BAYERISCHE MOTOREN WERKE AG'S RESPONSE TO MOTION TO COMPEL BAYERISCHE MOTOREN WERKE AG TO PROPERLY RESPOND TO DISCOVERY REQUESTS**

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

    COME NOW, Lynn Barnhill, as Wrongful Death Act Representative of the Estate of Aida Musa, Deceased, and Aziz K. Musa, and Tariq Musa, and Omar Musa ("Plaintiffs"), and file this Reply to Defendant Bayerische Motoren Werke AG's ("BMW AG") Response to Motion to Compel Defendant Bayerische Motoren Werke AG to Properly Respond to Discovery Requests, and would respectfully show the Court the following:

**I.**
**BACKGROUND**

    1.    Plaintiffs crafted limited discovery requests in this matter to implicate only relevant and necessary information for the presentation of their case.  Plaintiffs have not used the discovery process as an impermissible fishing expedition.  To date, Plaintiffs have propounded four Requests for Admission, sixteen Requests for Production, and twelve Interrogatories to BMW AG.  In response to most of these discovery requests, however, BMW AG has resisted producing relevant documents and discoverable information.  So far, BMW AG has produced less than four hundred

pages of responsive documents, photographs, and videos. In an effort to begin a good faith exchange of information, Plaintiffs provided BMW AG with a detailed settlement brochure almost nine months ago, which included expert reports explaining their theory of the case.[1] In response, BMW AG has objected at every turn and sought to make discovery in this case as difficult as possible. By their Motion to Compel, Plaintiffs merely ask that BMW AG comply with the discovery rules.

## II.
## BMW AG's Prefatory Objections are Improper

2.      To begin, BMW AG mischaracterizes the nature of Plaintiffs' allegations, stating that this suit claims only that "the roof structure did not adequately protect the decedent in the accident." *See* Dkt. # 90 at 2. Since as early as October 1, 2010, Plaintiffs have emphasized that this case is one concerning the issue of occupant containment. Plaintiffs' First Amended Complaint clearly states that the claims in this case concern the vehicle's crashworthiness. Mrs. Musa's fatal injuries were a result of the vehicle's safety systems failing to maintain her survival space and failing to *contain* her within that space. Plaintiffs' claims are not limited to the failure of the 1995 BMW 840Ci's roof.[2]

3.      The defined term "the vehicle" is not overly broad. Plaintiffs defined "the vehicle" as the 1995 BMW 840Ci and any other BMW 8-series vehicles (including the 830i, 850i, 850Ci,

---

[1] *See* Expert Report of Stephen Syson attached hereto as **EXHIBIT A** and incorporated herein for all purposes; Expert Report of Kelly Kennett attached hereto as **EXHIBIT B** and incorporated herein for all purposes.

[2] Plaintiffs' experts' reports evaluate the vehicle's occupant crash protection systems and assess the crash safety performance and design of the vehicle, including the roof, roof support structures, and safety belt systems in the vehicle. Occupant protection can only be accomplished through a systems approach where the occupant protection systems work together to protect the occupant. Plaintiffs' experts evaluated the vehicle's crashworthiness as a whole, and did not limit their focus to the vehicle's roof. *See* **EXHIBITS A** and **B**.

850CSi, M8, and B12 5.0) manufactured from 1989 to 1999. But BMW AG represents that Plaintiffs have consented to a definition of "the vehicle" through the meet-and-confer process that Plaintiffs have simply not agreed to. Plaintiffs have agreed that "the vehicle" excludes the 830i, M8, and B12 models. At no time have Plaintiffs ever agreed or consented to limit "the vehicle" to "model year 1991-1997 8 series coupes . . . that were produced for use in the United States," in terms of discovery. *See* Dkt. # 90 at 2. Plaintiffs agreed to limit the sharing provision in the Protective Order of Confidentiality to 1994 to 1997 BMW 840Ci vehicles, but it was clearly stated that "**[t]his Protective Order of Confidentiality does not define the scope of discovery in this case, and neither party has agreed to limit or broaden the scope of discovery by agreeing to this order.**" *See* Dkt. # 62 at ¶ 3 (emphasis added). Plaintiffs chose to begin the relevant scope of vehicles in 1989 because the BMW 8-series debuted at the Frankfurt Motor Show in September of 1989 and then moved into production. The 8-series was produced for international use until 1999, which accounts for the final year of Plaintiffs' relevant scope. BMW AG's correspondence of May 25, 2011 mentions nothing about limiting the model years of the 8-series automobiles to between 1991 and 1997 production for use in the United States. *See* Correspondence of May 23, 2011 attached hereto as **EXHIBIT C** and incorporated herein for all purposes. Plaintiffs have never agreed to such a discovery limitation. *See* correspondence of May 25, 2011 attached hereto as **EXHIBIT D** and incorporated herein for all purposes. Plaintiffs are not aware of any basis for BMW AG's representation to this Court that such an agreement was reached.

     5.     Accordingly, there has been no agreement to limit "the vehicle" to model year 1991 to 1997 8-series coupes produced for use in the United States. To the extent BMW AG has not produced information responsive to Plaintiffs' discovery requests concerning "the vehicle," Plaintiffs request that this Court overrule BMW AG's objection and compel such production.

## III.
### INDIVIDUAL DISCOVERY REQUESTS

*Request for Production No. 1: Produce all test data, test reports, videos and photographs pertaining to FMVSS 216 tests of the vehicle.*

6.     Plaintiffs have not agreed to limit "the vehicle" to model year 1991 to 1997 8-series coupes that were produced for use in the United States. Plaintiffs note that, to date, BMW AG has only produced one FMVSS 216 test for the 8-series platform.

*Request for Production No. 2: Produce all test data, test reports, videos and photographs pertaining to FMVSS 216 tests of similar vehicles.*

7.     The term "similar vehicles" is defined in Plaintiffs' Requests as all 1995 to 2010 BMW 300 series and 600 series two-door vehicles, excluding convertible models. Plaintiffs selected these vehicles because they are most similar to the BMW 8-series line of vehicles. The 3-series and 6-series two-door vehicles are similar in size, vehicle type (two-door coupes), and vehicle mission (luxury performance vehicle for on-road travel). BMW AG objects to all of Plaintiffs' requests containing this term because BMW contends that discovery is limited to the 8-series line of vehicles.

8.     At the outset, it should be noted that Federal Rule of Civil Procedure 26(b)(1) allows discovery "regarding any non-privileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* The standard for relevance is broad and encompasses "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 (1978). *This is not the standard for the admissibility of evidence at trial.* There is, therefore, a clear distinction between the scope of discovery and the standard of admissibility. Therefore, this Court should not adopt a "substantially similar" predicate or standard with regard to ***discovery***, as BMW AG suggests.

9. In *Petersen v. Daimler Chrysler Corp.*, the court recognized this distinction. No. 1:06-cv-00108-TC-PMW, 2007 WL 2391151, at *3 (D. Utah Aug. 17, 2007). There, Cooper Tire & Rubber Company sought to limit discovery to tires identical to the tire at issue in the case. *Id.* at *1. In making this argument, Cooper contended that the plaintiffs had the burden of establishing that different products were substantially similar for purposes of discovery. *Id.* at * 2. The court disagreed that plaintiffs carried such a burden, noting instead that "this appears to be the burden that [p]laintiffs would bear if they sought to have evidence about similar products or similar accidents admitted **at trial**." *Id.* (emphasis added). "Cooper's arguments in favor of limiting the scope of discovery in this case appear to be somewhat misplaced. Those arguments seem better suited to the more narrow issue of admissibility of certain information, rather than the issue before the court, which is the broader question of whether that information is discoverable." *Id.* at *3.

10. The court explained that the scope of discovery under the federal rules is broad and that discovery is intended to help clarify and define the issues of the case. Cooper's proposed limitation of discovery to essentially identical tires to the tire at issue was overly narrow and contrary to the intended purpose and scope of discovery. *See id.* The court assured Cooper that any concerns it may have "about the degree of similarity of any discovery to the Subject Tire or the accident can be resolved if and when [p]laintiffs attempt to admit that discovery into evidence." *Id.*

11. Courts in other circuits have come to similar conclusions when confronted with this issue. In *Sumner v. Biomet, Inc.*, the plaintiff sought discovery of other lawsuits or complaints regarding a hip replacement product group. No. 7:08-CV-98(HL), 2009 WL 3064615, at *1 (M.D. Ga. Sept. 17, 2009). The defendant requested that plaintiff's discovery requests be limited to information involving substantially similar allegations of defect. *Id.* However, the court disagreed and held that the proper scope of discovery in the matter was whether or not the requested information was reasonably calculated to lead to the discovery of admissible evidence. *Id.* at *2.

"Whether or not the requested information would be admissible at trial is of no moment in the discussion of whether the information is relevant in discovery." *Id.*; *see also Bolton v. Polaris Indus., Inc.*, No. 1:09-CV-0691-RWS, 2009 WL 5031368, at *1 (N.D. Ga. Dec. 15, 2009).

12. In *Albee v. Continental Tire North America, Inc.*, Continental argued that information requested by plaintiff with regard to tires other than the model at issue was not discoverable until plaintiff demonstrated that the other tires were substantially similar to the tire at issue. No. Civ. S-09-1145 LKK/EFB, 2010 WL 1729092, at *6 (E.D. Cal. April 27, 2010). The court noted that the only binding authority presented by Continental for this contention concerned the admissibility of substantially similar evidence at trial, as opposed to the discoverability of evidence. *Id.* The court disagreed that substantial similarity was a predicate to discovery. The court stated:

> The distinction between admissibility at trial and discoverability is especially significant where, as here, a threshold question is factually intensive. Information necessary to determine whether products are similar will ordinarily be within the control of the manufacturer and/or designer. **The rules cannot be read as imposing a "Catch-22" that would require proof of similarity before a party may discover evidence of similarity.**

*Id.* at *7 (emphasis added).

13. *Albee* speaks volumes with regard to the standard proposed by BMW AG. Such a discovery standard would require Plaintiffs to prove similarity before having access to the documents that may assist in proving similarity. This cannot be a viable discovery standard. In fact, such a discovery standard would be untenable when, as here, discovery requests seek information concerning whether and how products are *dissimilar*. For example, Plaintiffs' Request for Production No. 2 seeks roof crush test data of similar vehicles, which encompass a range of 3-series and 6-series vehicles. A purpose of this request is to determine the existence of safer alternative designs. The 1995 BMW 840Ci appears to have a roof that is weaker than any other vehicle made by BMW in the last thirty years; the strength-to-weight ratio of the 1995 BMW 840Ci is merely 1.85

according to BMW's own discovery response. The inclusion of a B-pillar on similar 2-door BMW vehicles resulting in a stronger roof would indicate that a safer alterative design was available.

14. This issue was addressed in *Albee*, where the plaintiff sought to discover whether products were dissimilar, which may have revealed that other tires presented a superior, safer design that should have been used in the subject tire. *Id.* Whether the subject tire "perform[ed] as good as other sets of tires, or much worse than other sets of tires, or even better than other sets of tires" was highly relevant and discoverable information. *See id.* Similarly, in this case, Plaintiffs are requesting very limited discovery of these other vehicles to show that the similar vehicles (with conventional B-pillars) have much stronger roofs than the 1995 BMW 840Ci. The testing—of which BMW has sole possession—will allow the jury to see how a similar vehicle with a B-pillar performs in testing conducted by BMW and compare its performance with the testing BMW completed on the 1995 BMW 840Ci, which lacks a conventional B-pillar. As noted, this information is relevant to the availability and economic and technological feasibility of safer alternative designs.

15. To be sure, *Albee* notes that the safety of another product will be relevant if the other product is *similar enough* to the one at issue that the two could have shared a common design. *Id.* However, this is not equivalent to the substantial similarity requirement that BMW AG attempts to impose on Plaintiffs. Plaintiffs contend that the 1995 to 2010 3-series and 6-series two-door vehicles implicated in this request are *similar enough* to the 1995 BMW 840Ci that they could have shared a common design. Contrary to BMW AG's contention, Plaintiffs are not seeking discovery of "every vehicle ever manufactured by BMW AG." Plaintiffs limited their request to the BMW vehicles most similar to the 1995 BMW 840Ci. The primary difference between the roof structures is that the similar vehicles were equipped with B-pillars. While the inclusion of a B-pillar is dissimilar, it is exactly this dissimilarity that is at the heart of Plaintiffs' request, allowing Plaintiffs

to discover information concerning safer alternative designs for a safer roof structure.

16. BMW AG offers no competent evidence to suggest that the 3-series and 6-series 2-door vehicles are not substantially similar, or even "similar enough." BMW AG simply claims that the vehicles and their components are not similar. Plaintiffs, however, have provided a detailed affidavit from their expert, Stephen Syson, illustrating why each of Plaintiffs' discovery requests are relevant and may assist the finder of fact in this case. BMW AG requests that discovery be limited in this case to only the BMW 8-series line based on its unilateral definition of "substantially similar."

17. BMW AG should not be heard to argue that Plaintiffs' requests are overly broad as BMW AG provided any proof to that effect. BMW AG has produced FMVSS 216 testing information for what it contends is the 8-series line of BMW vehicles. This testing information amounted to approximately twenty pages of data, with no video. Producing a similar amount of test data for the 3-series and 6-series vehicles would not be unduly burdensome.

18. In its Response, BMW AG relies heavily on a Memorandum Opinion and Order from this Court. But as with *Albee* and the other cases cited herein, the Tenth Circuit case law cited in the Opinion speaks only to the admissibility of substantially similar evidence **at trial**. *See, e.g., Staley v. Bridgestone/Firestone, Inc.*, 106 F.3d 1504, 1512 (10th Cir. 1997) (discussing the admissibility of substantially similar evidence *at trial*). The United States Court of Appeals for the Tenth Circuit has never ruled on the issue of "substantial similarity" in the discovery phase.

19. Further, *Gonzales* is distinguishable from the instant case. There, plaintiff's discovery related to notice of a defect in the subject tire. Here, Plaintiffs have already determined their theories with regard to the defects at issue with the 1995 BMW 840Ci. A purpose of Plaintiffs' Request is to show that similar vehicles, as defined, have stronger roofs than the 1995 BMW 840Ci, and that the vehicles are different in that critical aspect. This evidence is relevant to the issue of

safer alternative design and to show that the BMW 8-series has a weaker roof than similar vehicles made by BMW AG. These facts should not be concealed from the jury.

20.     Plaintiffs should not have to prove that the 3-series and 6-series vehicles are substantially similar to the BMW 840Ci in order to seek production of documents relevant to their liability claims. It is Plaintiffs' position that the 3-series and 6-series are different because they have a roof that is far superior and much stronger than the 8-series vehicle that is the subject of this case. <u>That difference is the point</u>. If the 8-series roof is only half or a third as strong as the other two-door coupes BMW AG has produced and sold, then a jury should be allowed to consider that evidence, which is relevant to both the feasibility and actual existence of a safer alternative design. It is Plaintiffs' claim that if the 8-series had a roof like the other two-door coupes that BMW has made, there would not have been a loss of survival space and containment in this rollover. BMW has the test data, the test videos, and the supporting documentation that prove this point, but they are refusing to provide this critical evidence to Plaintiffs—and ultimately the jury.

21.     Cases should be tried and decided on what the facts reveal, not on the basis of evidence that a manufacturer is able to conceal in discovery. *See Herbert v. Lando*, 441 U.S. 153, 176 (1979). The cases cited by Plaintiffs are resolute in their holdings that substantial similarity is not the proper standard for discovery. This is most strikingly evidenced when one considers that Plaintiffs would be prevented from discovering the availability of safer alternative roof designs through highlighting the dissimilarity between the vehicles' roof structures. Similar vehicles with B-pillars will more than likely have much stronger roofs than the BMW 840Ci, which implicates a safer alternative design that could have been implemented, but for a decision by BMW AG.

*Request for Production No. 3: Produce all design and assembly drawings for the roof and roof structure of the vehicle.*

22.     This request is not in dispute to the extent that BMW AG has responded to this request for the 1995 BMW 840Ci and any other BMW 8-series vehicles (including the 850i, 850Ci, and 850CSi) manufactured from 1989 to 1999. Again, Plaintiffs have not agreed to limit "the vehicle" to model year 1991 to 1997 8-series coupes that were produced for use in the United States for the same reasons discussed above.

*Request for Production No. 4: Produce all design and assembly drawings for the roof and roof structure of similar vehicles.*

23.     BMW AG again objects on the grounds of substantial similarity. Therefore, Plaintiffs incorporate their arguments relating to Request for Production No. 2 regarding the improper application of substantial similarity to this discovery issue.

*Request for Production No. 5: Produce all test reports, test data, videos and photographs pertaining to all dolly rollover tests, drop tests and inversion (spit) tests performed on the vehicle.*

24.     This request is no longer in dispute only to the extent that BMW AG has provided Plaintiffs with all the requested test data for the 1995 BMW 840Ci and any other BMW 8-series vehicles (including the 850i, 850Ci, and 850CSi) manufactured from 1989 to 1999.

*Request for Production No. 6: Produce all test reports, test data, videos and photographs pertaining to all dolly rollover tests, drop tests and inversion (spit) tests performed on similar vehicles.*

25.     BMW AG lodges the same "substantially similar" objection as it did with regard to Requests 2 and 4, above. Accordingly, Plaintiffs incorporate their arguments above. Additionally, BMW AG mischaracterizes the amount of testing requested. The only type of responsive testing BMW AG had for the entire 8-series (10 model years), was a single dolly rollover test.[3] That testing

---

[3] A dolly rollover is a dynamic test where a vehicle is placed on a dolly that runs along a track. The dolly is set in motion and the vehicle is thrown from the dolly, inducing a rollover event.

consisted of 153 pictures, 118 pages of data, and 2 short videos. BMW AG produced these documents via electronic mail. Therefore, the documents sought by Plaintiffs are relatively compact, presumably similar in size to the 8-series production.

*Interrogatory No. 5*: *Identify by model year and model name all vehicles Defendant manufactured from 1989 through 2010 WITH a B pillar.*

26. Plaintiffs are merely seeking to have BMW AG provide information under oath in a form that can be used at trial regarding BMW models that have a B-pillar. But BMW AG refuses to provide this information. BMW AG insists that the universe of BMW vehicles is easily identified publicly and that Plaintiff should be responsible for determining which vehicles were manufactured with a B-pillar. Contrary to BMW AG's repeated statements, the universe of BMW vehicles is not easily identified publicly, and BMW AG—the manufacturer of all of these vehicles—is in the best position to **properly and completely** identify all of its vehicles that were manufactured with a B-pillar. It is technically improper and unresponsive for an answer to an interrogatory to refer to outside material, including other interrogatories. *Equal Rights Ctr. v. Post Prop., Inc.*, 246 F.R.D. 29, 35 (D.D.C. 2007). If Plaintiffs make this determination on their own, such information would not be in a form usable at trial.

*Interrogatory No. 8*: *State the strength-to-weight ratio of similar vehicles.*

27. This request seeks information regarding similar vehicles, as defined by Plaintiffs in their discovery requests and outlined above. All Plaintiffs are asking for are a couple of numbers indicating the strength-to-weight ratio ("SWR") of the 3-series and 6-series line. The SWR of the 8-series is 1.85. Plaintiffs believe that the roof on the 3-series and 6-series two-door vehicles, excluding convertibles, is at least twice as strong as the roof of the 8-series. Plaintiffs cannot verify this, however, because BMW refuses to produce the relevant evidence. *See* Request for Production No. 2, above. As with all of Plaintiffs' requests seeking information regarding similar vehicles,

BMW AG has refused to produce responsive information on the basis of "substantial similarity." Accordingly, Plaintiffs incorporate their arguments in Request for Production No. 2, above. For the same reasons, BMW AG should be compelled to answer this reasonable and proper Interrogatory.

*Interrogatory No. 11*: *Please Identify all vehicles that You have evaluated with a dolly rollover test, as You claim to conduct in Your advertisement attached hereto as* **Exhibit A**.

28. BMW AG states in its Response that it will supplement its discovery response to provide more information regarding this Interrogatory. However, BMW AG recently supplemented its discovery to Plaintiffs, but no supplementation with regard to this Interrogatory was made. As stated in Plaintiffs' Motion to Compel, one reason for this request is to determine whether or not BMW AG actually did systematically test its vehicles with dolly rollover testing, as it contends it does in its advertisements. The fact that BMW AG has wholly refused to answer this Interrogatory is indicative of potential misrepresentations in its advertising. In fact, BMW AG states in its Response that it cannot identify which vehicles were tested, other than the 8-series, with dolly rollover testing. Plaintiffs are simply asking BMW AG to identify which vehicles it designed and manufactured were evaluated with a dolly rollover test.

### IV.
#### CONCLUSION

29. As outlined in Plaintiffs' Motion to Compel and this Reply Brief, BMW AG's discovery responses are deficient. Plaintiffs and BMW AG have come to agreements on many issues relating to this discovery, however, BMW AG has not yet satisfied its discovery obligations. Plaintiffs' discovery requests have been limited and well-crafted to stay within the scope of discovery. Plaintiffs therefore request that this Court overrule BMW AG's objections and grant Plaintiffs' Motion to Compel. Plaintiffs further request any and all such other and further relief, both general and special, to which they may be justly entitled, either at law or in equity.

Respectfully submitted,

**THE AMMONS LAW FIRM, L.L.P.**

By:   /s/ David A. Kirby (Pro Hac Vice)
Robert E. Ammons (*Pro Hac Vice*)
State Bar No. 01159820
David A. Kirby (*Pro Hac Vice*)
State Bar No. 24074538
3700 Montrose
Houston, TX  77006
Telephone: (713) 523-1606
Facsimile: (713) 523-4159

And

Patrick A. Casey
PATRICK A. CASEY, P.A.
P.O. Box 2436
Santa Fe, NM  87504-2436
Telephone: (505) 982-3639
Facsimile: (505) 989-9181

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I hereby certify that on the 8th day of July, 2011, I caused to be electronically submitted the foregoing document with the clerk of court for the U.S. District Court District of New Mexico, using the electronic case files system of the Court.  I hereby certify that I have caused all counsel of record to be electronically served via the Court's CM/ECF system:

Jeffrey M. Croasdell
Todd E. Rinner
RODEY, DICKASON, SLOAN, AKIN & ROBB
P. O. Box 1888
Albuquerque, NM 87103
Telephone: (505) 765-5900
Facsimile: (505) 768-7395

 /s/ David A. Kirby (Pro Hac Vice)
DAVID A. KIRBY